FILED

2005 Jul-08  PM 04:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

UNITED STATES OF AMERICA       }
                               }
v.                             }
                               }     CASE NO.
STEVE RANDY HOLLAND            }
                               }     CR-94-AR-263-NE


## MEMORANDUM OPINION

Challenging this court's jurisdiction, United States of America ("the Government") has moved to dismiss a petition filed on May 10, 2004, by *pro se* petitioner, Steve Randy Holland ("Holland"), and subsequently twice amended by Holland's court-appointed counsel. Holland attacks the restitution portion of the sentence this court imposed upon him on May 8, 1995, after a jury convicted him of robbing a bank. Holland's equally culpable co-defendant, William Bennett Hicks ("Hicks"), had previously pled guilty to the same bank robbery. The court first sentenced Holland, giving him 210 months in custody to be followed by three years supervised release. Holland's order of restitution was entered pursuant to the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, *et seq*. It provided:


The defendant shall make restitution (**jointly and severally with co-defendant William Bennett Hicks**) to the following entity in the following amount:

| Name of Payee | Amount of Restitution |
|---|---|
| North Jackson Bank | $6,945.00 |

Higdon, AL 35979

Payments of restitution may be collected in accordance with the Bureau of Prisons Inmate Financial Responsibility Program, except **that no further payment shall be required after the sum of the amounts actually paid by both defendants has fully covered the compensable injury.  Upon release from custody, no further restitution payments are required and defendant is relieved of restitution responsibility**.

(emphasis supplied).

This order was consistent with what the court said during the sentencing hearing, which is:

I don't know what the presentence report is going to show with respect to the ability of the coconspirator, Mr. Hicks, to pay restitution.  I know that as far as I'm concerned, you don't have the capability or the ability to pay any restitution now.  But to the extent the Bureau of Prisons Inmate Financial Responsibility Program can collect from you, while you are incarcerated, money toward the six thousand nine forty-five, it will do so because I'm going to put that obligation on you.  But I'm going to say this.  No sum will be required of you after the sum of the amounts actually paid by both defendants has either covered the injury here without any interest running on it, no interest, or as far as you are concerned, when you are released from custody.  So that if the Bureau of Prisons Inmate Financial Responsibility Program does not, in combination with what it's collected from Mr. Hicks, accomplish payment to the North Jackson Bank without interest the sum of six thousand nine forty-five **by the time you are released, you'll be free from that.**  So that, put another way, when you get out of custody and are on supervised release, you won't owe anything to the North Jackson Bank.  You will start free of that obligation.

(emphasis supplied).

Over a month later, on June 25, 1995, the court sentenced Hicks.  Adhering strictly to the terms of the plea agreement, Hicks was ordered to pay restitution on the following terms, more onerous

than the terms imposed on Holland:

The defendant shall make restitution to the following entity in the following amount:

| Name of Payee | Amount of Restitution |
|---|---|
| North Jackson Bank of Higdon, Alabama | $6,945.00 |

Payments of restitution are to be made to the Clerk of the Court, for transfer to the payee.

**Restitution shall be paid jointly and severally with co-defendant Steve Randy Holland.** While the defendant is in custody restitution shall be collected in accordance with the Bureau of Prisons Inmate Responsibility Program. **After defendant's release from custody, any restitution amount remaining shall be paid at a monthly rate of $100.00, unless modified by the probation officer for good cause shown. Said restitution shall be paid in full by the end of the supervision period.**

(emphasis supplied).

Hicks was sentenced to a custodial term of 30 months, to be followed by three years supervised release. Because Holland's restitution order recognized that his obligation was going to be joint with Hicks, the court, while sentencing Holland, pre-committed itself to ordering Hicks to pay restitution. Hicks has never complained about this prejudgment. How the court could promise one defendant what it will do to a co-defendant who was not there to complain about it, is a good question, but one that has not been asked.

There was no jury involvement whatsoever in fixing Holland's restitution obligation. To the extent the amount of the bank's loss was explored at all, the court simply adopted the probation

3

officer's hearsay.   Neither Holland nor his appointed counsel asserted a Sixth Amendment requirement that a jury determine the issues surrounding restitution, with the burden of proof being on the Government to prove the essentials beyond a reasonable doubt. In other words, Holland did not question the constitutionality of that part of the VWPA that allowed the court to impose restitution without confrontation or jury participation.  Shortly after Holland was sentenced, the VWPA was amended by the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 1336, but the concept of non-jury determination of the amount of restitution was not changed.

When Holland was sentenced, the law of the Eleventh Circuit clearly was that an order of restitution is penal in nature.  It constitutes **punishment**, on a par with custody or probation.  *See United States v. Johnson*, 983 F. 2d 216 (11th Cir. 1993).  At the time of Holland's sentencing, this court's view of the VWPA was well known among the lawyers in the Northern District of Alabama, if not beyond.  This included Holland's court-appointed counsel, who, as stated, offered no objection whatsoever to the fixing of the restitution obligation using only hearsay information in the presentence report.  Everybody in the courtroom knew that this court considered the federal restitution scheme constitutionally flawed.  In fact, when this court imposed sentence, it was not following the sage advice it had dispensed to other judges when it wrote *Making Sense of Victim Restitution: A Critical Perspective*,

4

published in Federal Sentencing Reporter, Jan/Feb 1994, Vol. 6, No. 4 at 234.  If this court had followed its own advice, it could have, and it should have, articulated several reasons for not imposing an ambiguous and an impossible restitution obligation on Holland.  Because in 1995 the court was operating under the VWPA and not the MVRA, it was not tempted, as it would later have been, to postpone entry of the restitution order for more than 90 days after entering the written judgment of conviction, and create a convenient but impenetrable obstacle to the enforcement of an impossible restitution order.  *See United States v. Kapelushnik*, 306 F. 3d 1090, 1095 (11th Cir. 2002).

Holland appealed from the jury verdict and his sentence, but his court-appointed counsel did not mount an appellate attack on the restitution order, and the appeal on other grounds of appeal was unsuccessful.

On May 10, 2004, nine years and two days after Holland was sentenced, and half-way through his custodial term, he filed the present provocative, if inartful, *pro se* petition, complaining that the Bureau of Prisons ("BOP"), which had not bothered to collect any restitution from him, had suddenly informed him that he owes restitution.  The chief magistrate judge of this court appointed a lawyer for Holland.  That lawyer has filed exceptionally well researched and well thought out arguments and amendments on behalf of Holland.  Holland's first amended petition attached several

5

documents that Holland had furnished his counsel.  The authenticity and truth of these documents have not been challenged.  However, the Government has consistently insisted that this court lacks jurisdiction because of the fact that Holland's petition is what the Government insists is procedurally bound as a successive petition under 28 U.S.C. § 2255 and because Holland has not obtained the permission of the Eleventh Circuit to file it.

Holland attempts to travel through several jurisdictional doors in order to obtain a cancellation of his miraculously reappearing restitution obligation.  The Government's equally well written, and oft reiterated, motion to dismiss denies that Holland has any way to open the door of this court to a judicial evaluation of his plight on the merits.

Holland's main substantive thrust is that he was denied a jury trial on the restitution question in violation of the Sixth Amendment.  His present counsel apparently came upon this idea, and amended to assert it, after the Supreme Court decided *Blakely v. Washington,* 542 U.S. 296*,* 124 S. Ct. 2531 (2004), and *United States v. Booker*, 543 U.S. ____, 125 S. Ct. 738 (2005).  Holland's present counsel already well knew the open secret what this court thinks about the federal restitution scheme.  The decisions in *Blakely* and *Booker* only whetted counsel's appetite.

Holland also filed a motion for discovery, seeking access to documents maintained by the BOP related to the status of his

6

restitution account, and seeking to ascertain, what, if any, restitution his co-defendant, Hicks, has paid. The court has not yet ruled on Holland's said motion.

As is already readily apparent, Holland's petition was precipitated by his frustration over the handling by the BOP of his alleged restitution obligation. He could not find out what amount, if any, Hicks has paid toward the joint obligation. Obviously, if Hicks has paid the bank in full, Holland is off the hook. It is just as obvious that when Holland filed his petition, he was unaware of the critical differences between the restitution obligations imposed on him and Hicks. Hicks was required to pay **in full** before his supervised release expired, an event which would be expected to occur much sooner than the date upon which Holland's custodial sentence would expire at which time Holland would be released from any restitution obligation. In retrospect, the difference between the two restitution orders is eye-catching. Although joint with Holland, the obligation imposed on Hicks was, by its express and unequivocal terms, to be paid "**in full**" by the end of his period of supervision. Even during Hicks's period of supervision, he was to pay restitution "at a monthly rate of $100". The law of every jurisdiction is that if a joint obligation is discharged as against one of the joint obligors, the obligation ends for both. This court did not remember why it made the distinction between Hicks and Holland until it reviewed a

transcript of Holland's sentencing hearing.  As it turns out, the difference in treatment has caused trouble for Holland, if not for Hicks.  If the language in Holland's restitution order is taken literally, and without regard to what might have happened in theory, he will not be off the restitution hook until his release from custody in eight more years.  He does not want to wait eight years to be relieved of that obligation, because in the meantime the BOP will continue to make deductions from his prison income.  Ostensibly, the BOP intends to keep exacting restitution payments for eight years without regard to what Hicks has paid.  Although payment of restitution "in full" was deliberately made a condition precedent to the termination of Hicks's supervised release, the identical condition was imposed **by the VWPA itself** on both defendants and could not be altered.  All interested parties should be glad that Holland did not wait until his release from custody to call for an inquiry into what, if any, restitution obligation he will have when his period of supervised release begins.  This court's unequivocal order of restitution says that Holland will have no such obligation.  This facially conflicts with the VWPA's requirement that the entire unpaid balance be paid before the end of supervision.  This contradiction only reflects one of the many flaws in the VWPA, which the MVRA attempted, unsuccessfully, to correct.

The BOP's Progress Review Report of January 3, 1997, informed

Holland that he had fully satisfied his restitution obligation.
For aught appearing to Holland, Hicks, or some good Samaritan, had
paid the obligation to the victim bank, or the bank had released
the robbers.   The same information was contained in Holland's
Progress Review Reports of 1998, 1999, 2000, 2001, and 2002.  After
being led to believe that his restitution obligation was behind
him, Holland was suddenly informed in 2003 that his restitution
obligation was exactly what it had been to start with on May 8,
1995, namely, $6,945.  He was thereupon made to sign a so-called
"contract", purporting to confirm a restitution obligation.   The
apparent "consideration" for this "contract" was Holland's being
allowed to continue to participate in UNICOR, the prison employment
opportunity that produces a small amount of income for those ready
and willing to work.   There were, of course, other possible
penalties if Holland did not sign the "contract".  *See* 28 C.F.R. §
545.11(d).  The sudden reappearance of a monetary penalty prodded
Holland into seeking the assistance of this court.

By availing itself of readily available judicial knowledge,
the court has learned that Hicks, who was sentenced to 30 months
custody, and ordered to pay the same $6,945 Holland was ordered to
pay, was released to supervision on January 15, 1998.  On May 7,
1999, Hicks's release term was revoked by a district judge in
another federal judicial district where Hicks was being supervised,
and a 12 month custodial sentence was imposed upon him, without any

9

provision for subsequent supervision.  The new sentence made no mention whatsoever of restitution.  Hicks's joint obligation, upon which Holland justifiably relied, simply evaporated.  During the time Hicks was in custody or under supervision, he paid only $999 toward the joint obligation to repay the money that the two of them had stolen.  Hicks has escaped.  He has left Holland and the bank holding the bag.  The court finds no indication of any effort by the Government to collect anything further from Hicks.  The victim bank has conspicuously not been notified of this proceeding and is undoubtedly blissfully unaware of the status of the robbers' repayment obligations.

If this case does not present a unique set of circumstances, the words *sui generis* have lost their meaning.

### The Inherently Retained Jurisdiction Over Orders of Restitution

Does this court have inherent or retained jurisdiction to enforce or alter a restitution obligation that it has imposed?  The logical answer is "yes".  Another federal judge released the restitution obligation that this judge imposed upon Hicks.  If that court had the power to alter Hicks's penalty, this court has the power to alter the restitution penalty it imposed on Holland.  Whatever procedural devices Holland invokes, he is not barred from access to this court to right a wrong that is partly the fault of this court.

When, for some unknown reason, the BOP reimposed a restitution obligation on him, Holland faced nine more years in prison.  By what it did, the BOP opened a special door for Holland, by-passing the doors that arguably might be opened by 28 U.S.C. § 2255, 28 U.S.C. § 2241, 28 U.S.C. § 1651(a), 18 U.S.C. § 3664(b), or a writ of error *coram nobis*.  A sentencing court inherently retains jurisdiction to entertain petitions to straighten out messes like this one.  The order this court entered on May 8, 1995, purported to create a continuing obligation on Holland, but that obligation was directly related to the obligation contemporaneously imposed upon Hicks.  Both obligations *prima facie* required court monitoring.  They were analogous to mandatory injunctions over which the court retains jurisdiction for the purposes of enforcement or amelioration.  For instance, in any criminal case, if a defendant during his supervised release is facing possible revocation for his failure to make required restitution payments, the court can alter the restitution obligation based on exigent circumstances.  Without relying on any of Holland's jurisdictional theories, the court has the power to deny the Government's motion to dismiss if, as the court has concluded, Holland's petition has substantive merit under this unique set of circumstances.

It is outrageous to think that unless this court intervenes, Holland will serve another eight years while having restitution payments exacted from his meager prison income, and while co-

defendant, Hicks, is free of the obligation that, by its original terms, was supposed to be paid **in full by Hicks** before his supervised release ended.   The disparity in the way the joint obligors have been treated is more than just an unfortunate anomaly.  It is a travesty that calls for correction.

There is another and even more obvious reason for straightening out the BOP besides Holland's unfair treatment caused by a series of mistakes.  It is that the VWPA under which Holland was sentenced, clearly provides a five-year time limit on all restitution obligations, something the BOP apparently did not understand any more than this court did when the sentence was imposed.  In pertinent part, the VWPA provided:

> The end of such period [of restitution payments], or the last of such installments **shall not be later than** -
>
> A.  The end of the period of probation, if probation is ordered;
>
> B.   Five years after the end of imprisonment imposed, if the court does not order probation; and
>
> C.  **Five years after the date of sentencing in any other case.**

18 U.S.C. § 3579(f)(2).  (emphasis supplied).

This language was eliminated by the MVRA shortly after Holland was sentenced, but it clearly applied to him in 1995.  It limited the collectability of restitution to "five years from the date of the sentence".   The court has persuasive authority for this proposition.  The United States Attorney for the Northern District

of Alabama, speaking through an Assistant United States Attorney, on August 20, 2003, concurred in this court's present reading of § 3663 by sending the following memorandum to the Chief Probation Officer of this very court:.

> We segregated for review all of our criminal collection judgments imposed under the VWPA and prior to April 24, 1996 (date MVRA became effective) which had outstanding restitution debts with no fine, assessment or other debt also owing to determine if they met the criteria for closing as set out in 18 USC 3663(f)(1)(2). Of course, this section was repealed by the MVRA, but was applicable to the pre-MVRA cases we segregated.

> We based our decision to close the cases on this statute and the relevant case law addressing the issue of when an order of restitution abated.  Although there is no Eleventh Circuit law on this particular issue, the first court to directly address this question under the VWPA was <u>United States v. Joseph</u>, 914 F.2nd 780, 786(6th Cir. 1990).  **The court held that former section 3663(f)(2) expressly limited the life of a restitution order to the time provided in one of the three options which permitted the court to order restitution over a period of time.**  That section allowed a court to require a defendant to make restitution within a specified period or in specified installments.  **The maximum time permitted under the sub-section was** 1) the end of the period of probation, if any, 2) **five years after release from prison if no probation is ordered, or 3) five years after sentencing.  The Fourth, Seventh and Tenth Circuits, in dicta, also assumed without discussion that a restitution order expired at the end of one of the applicable five year periods.**  <u>United States v. Rogat</u>, 924 F.2nd at 986 (10th Cir. 1991); <u>United States v. Morrison</u>, F. 2nd at 172 (10th Cir. 1991); <u>United States v. Diamond</u>, 969 F.2nd at 969 (10th Cir. 1992); <u>United States v. Piche</u>, 981 F.2d at 718 (4th Cir. 1992); <u>United States v. Johnson-Wilder</u>, 29 F.3rd 1100, 1106 (7th Cir. 1994).

(emphasis supplied).

If the United States Attorney was correct on August 20, 2003, the

United States should have **joined** Holland's petition and not **opposed** it.

Although the victim bank's means of recovering any unrecovered balance of its loss by civil process is unaffected, both Holland's and Hick's restitution obligations, as a matter of law, expired long ago by the express terms of the VWPA, rendering this entire discussion academic, except for the practical pickle in which Holland still finds himself with the BOP.

### Ineffective Assistance of Counsel and the Constitutionality of Restitution without Proof to a Jury

Assuming *arguendo* that this court is incorrect in both of the dispositive conclusions it has reached above, there is still a reason for taking jurisdiction of Holland's petition, something that will require overruling the Government's motion to dismiss. The Government says that Holland cannot be heard to argue constitutional questions he did not raise at trial or on appeal, and that he has not obtained the Eleventh Circuit's permission to put forward at this late date.  Holland makes several arguments for avoiding the procedural bar, but his best argument, and the one with which the court agrees, is that Holland received ineffective assistance of counsel at trial and on appeal and therefore should be allowed to argue the same issues that should, by effective counsel, have been presented at trial and, if necessary, on appeal.

No one can any longer deny what *United States v. Booker*, 543 U.S. ____, 125 S. Ct. 738 (2005), made clear on January 12, 2005, namely, that all facts essential to the imposition of, or the formulation of, a sentence must be proven beyond a reasonable doubt to a jury.  Because within the Eleventh Circuit an order of restitution as part of a sentence expressly constitutes a sanction for criminal behavior, restitution orders can no longer be entered in the Eleventh Circuit unless and until a jury finds that the Government has met its burden of proving (1) that the defendant's conduct caused the victim's loss, and (2) the amount of the victim's compensable loss.  In the instant case, the question, then, is not whether the imposition of an order of restitution **tomorrow** within the Eleventh Circuit would be unconstitutional if imposed upon a non-jury finding of fact.  The question, rather, is whether Holland **today** can complain about his not having had a jury in 1995 determine the extent of the bank's loss.  If any federal court within Alabama, Florida or Georgia today should order a bank robber to repay a particular sum of money to the robbed bank without a jury's first finding, beyond a reasonable doubt, not only that the robber robbed the bank, but that the bank lost a particular sum of money in the robbery, the restitution portion of the sentence would automatically be set aside as a violation of the Sixth Amendment principles recognized in *Booker*.  But, in 1995, should the Sixth Amendment's guarantee have been invoked by

15

Holland's counsel?

After *Blakely v. Washington* and *Booker v. United States*, Holland amended his petition to add an attack on the 1995 restitution order based on alleged ineffective assistance by his trial counsel at trial and on appeal.  This court deferred ruling both on the Government's motion to dismiss and on the merits of Holland's amended petition until the Supreme Court decided *Dodd v. United States*, 545 U.S. ____, 125 S. Ct. 2478 (2005), on writ of *certiorari* to the Eleventh Circuit.  *Dodd* was decided on June 20, 2005.  Unfortunately, *Dodd* provides no real assistance in resolving the jurisdictional questions here presented.  It does hold for the first time that the one-year limitation period within which a federal prisoner can file a motion to correct or set aside a sentence under 28 U.S.C. § 2255, based upon a right newly recognized by the Supreme Court, begins to run on the date upon which the Supreme Court initially recognizes the right and not on the date upon which the right is declared retroactive to cases on collateral review.  Although *Booker* constituted the first fully articulated Supreme Court recognition of the right to Sixth Amendment trial by jury of all controverted facts essential to the imposition of a sentence, Holland filed his petition before *Booker* was decided.  Therefore, Holland does not rely upon any Supreme Court recognition of retroactivity as a way around the bar of the statute of limitations.  Holland would only have needed

16

retroactivity if he could not satisfy this court that his trial and appellate counsel in 1995 did not provide him adequate assistance. The Eleventh Circuit has made its position clear that *Booker* is not retroactive in application to cases on collateral review, even if *Booker* constitutes a so-called "watershed" rule. *Varella v. United States*, 400 F. 3d 864 (11ᵗʰ Cir. 2005). The Supreme Court itself has, as yet, not spoken on the question of *Booker's* possible retroactivity on collateral review, but the Supreme Court has ostentatiously vacated and remanded a host of cases in which there would be little profit for a convicted defendant unless the *Booker* principle is applied.

In the instant case, Holland concedes, as he must, that his trial counsel "did not raise a Sixth Amendment or Fifth Amendment challenge to his restitution order either at sentencing or on direct appeal". This opens up the need to take an exhaustive look at Holland's allegation of ineffective assistance.

In response to the Government's insistence that Holland has not met his statutory deadline, Holland asserts the doctrine of "equitable tolling". In *Dodd v. United States*, 365 F. 3d 1273 (11ᵗʰ Cir. 2004), the Eleventh Circuit held:

> While equitable tolling is an "extraordinary remedy which is typically applied sparingly," . . . . it "can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition."

*Id.* at 1282. (internal citations omitted).

17

In this case, Holland filed his *pro se* 28 U.S.C. § 2255 petition attacking the restitution portion of his sentence within a reasonable time after the BOP changed its position and suddenly announced that Holland owed the entire amount of the original restitution award, and forced him to begin making payments. Under these extraordinary circumstances, the court finds that the doctrine of equitable tolling applies, and that Holland's petition was timely to the extent timeliness is an issue.

Holland's new counsel argues that Holland received ineffective assistance in 1995 when Holland's lawyer failed to test the constitutionality of the restitution award procedure by which this court imposed the penal sanction of restitution in a case in which the claim for restitution was not charged in the indictment, and in which the amount ordered to be paid was based on a standard other than proof by the Government beyond a reasonable doubt. For the reasons that precede and that follow, the court finds that the claim of ineffective assistance is well supported by the facts and by the applicable law so that Holland's petition is due to granted and the restitution award set aside, that is, unless this court, by what it has already said, has provided a compelling reason for voiding the restitution order.

The questions of retroactivity and procedural bar are not necessarily implicated in an "ineffective assistance" claim brought under 28 U.S.C. § 2255. *Massaro v. United States*, 538 U.S. 500,

504, 123 S. Ct. 1690, 1694 (2003).  If the performance of counsel is deficient as a result of not raising a particular issue, that issue can be raised much later for the very reason that it was not raised when it should have been raised by competent counsel.

There is a difference between the commission of legal malpractice under state law, so as to create a civil cause of action against a lawyer, and the performance by a lawyer that does not meet constitutional standards under the Sixth Amendment and therefore that constitutes "ineffective assistance".  In this case, Holland's defense counsel at sentencing and on appeal rendered constitutionally ineffective assistance by failing to mount a constitutional challenge to the VWPA insofar as that statute allowed the court, sitting without a jury, to decide the facts involving restitution that were not charged in the indictment and without employing the "beyond a reasonable doubt" standard.  Such a constitutional challenge was constitutionally required of Holland's counsel at trial and on direct appeal, based on the principles enunciated in *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881 (1975); *Jones v. United States*, 526 U.S. 227, 199 S. Ct. 1215 (1999); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000); *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002); *Blakely v. Washington*, 542 U.S. 26, 124 St. Ct. 2531 (2004); and *United States v. Booker*, 543 U.S. ____, 125 S. Ct. 738 (2005),

among others.

The Sixth Amendment is **twice** implicated in this case.  That amendment requires both that a jury decide the essential elements necessary to the imposition of a criminal penalty and that the defendant be adequately represented by a lawyer.  This court's long held belief that restitution cannot be ordered without proof beyond a reasonable doubt to a jury pre-dated *Booker*.  *Booker* still may not preclude non-jury restitution orders in those circuits in which restitution is thought to be a purely civil matter, but such cannot be true in the Eleventh Circuit, which has unequivocally held that restitution is a criminal penalty, in no way distinguished from the criminal penalty that was unconstitutionally imposed in *Booker*.

Defense counsel has a duty to raise potential constitutional claims during trial and on direct appeal.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court recognized that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance and announced the now-familiar test: a defendant claiming ineffective assistance must show (1) that counsel's representation "fell below an objective standard of reasonableness", and (2) that counsel's deficient performance prejudiced the defendant.  *Id.* at 2064-65 and 2068. This measure of the level of diligence and understanding of the law required of a criminal defense lawyer, does not require that he be prescient, but it does require that he raise every issue that

20

jurisprudential sources reasonably available might suggest as a matter of defense.  This does not mean that an issue that was not raised must, if it had been raised, have guaranteed victory, but it does mean that if it had been raised, it would have added to the possibility of ultimate victory, whether before the trial court or the Supreme Court.

While Holland was being tried and sentenced, *Booker* was only a gleam in the Supreme Court's eye.  But, *Booker*, and the cases that presaged it, were in the judicial pipeline.  If Holland's counsel had presented to this court the issue here being addressed by this court ten years later, this court cannot say with perfect certainty what it would have done about it, but it can say that counsel was ineffective in not finding out what this court would have done, and, if necessary, to have taken the issue all the way to the Supreme Court.  The Supreme Court result might have been entitled *United States v. Holland* instead of *United States v. Booker*.

The Government has put all its effort into challenging jurisdiction and therefore has not argued that fighting over $6,000 in 1995, in contrast to $6,000,000, or over a death sentence, would have been a waste of time for Holland's trial counsel.  But, Holland's counsel at sentencing obviously already knew that he was going to appeal.  Why did he not raise a worthy issue for that appeal instead of raising issues that got Holland nowhere?  To this

court, the answer is "ineffective assistance".

The Sixth Amendment requires that a defendant have effective assistance on a first appeal.  This is an absolute entitlement.  Therefore, a first appeal of right "is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney".  *Evitts v. Lucey*, 469 U.S. 387, 396, 105 St. Ct. 830, 836 (1985).  The deficiency in the performance of Holland's counsel at sentencing was carried over to the appeal.

In *Wiggins v. Smith*, 539 U.S. 510, 123 St. Ct. 2527 (2003), the Supreme Court held:

> We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.

123 S. Ct. at 2535.

Under the circumstances that appertained at the time of Holland's sentencing and on appeal, Holland's counsel was required to recognize the potential constitutional claim that inhered in this court's subsequent holding in *United States v. Kemp*, 938 F. Supp. 2554 (N.D. Ala. 1996), namely, that the MVRA is unconstitutional.  What this court said in *Kemp* in harsh criticism of the federal restitution scheme was never examined by an appellate court.  And, the Judicial Conference of the United States agreed with this court, as is reflected in *Kemp*.  In a way it predicted *Booker*,

especially insofar as the Sixth Amendment required for restitution sentencing is concerned.   Holland's counsel fell short of the performance prong of the *Strickland* test.

The law has long recognized that defense counsel, both trial and appellate, is required to raise potential constitutional claims in view of developing law.   The appropriate test is a mirror image of the performance prong of the *Strickland* "ineffective assistance" test.   In other words, if a constitutional claim is sufficiently developed so that the failure to raise it will cause a procedural default of the claim, it follows logically that failure to raise the constitutional claim also constitutes "ineffective assistance".   This test is stated in *Engle v. Isaac*, 456 U.S. 107, 134, 102 S. Ct. 1558 (1982), as follows:

> Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default.

102 S. Ct. at 1575.

In 1995, this court was on record as doubting the constitutionality of the VWPA, and counsel in other cases had raised the issue in this court.   As reflected in *Winship, Mullaney, Jones, Apprendi, Ring, Blakely* and *Booker*, this court was not the first to perceive the constitutional claim affirmed in those cases, both before and after Holland's sentencing and unsuccessful appeal to the Eleventh Circuit.   Holland's counsel simply did not raise a constitutional

claim that he was required to raise if the Sixth Amendment requirement of competent representation was to be met.

In *Pelmer v. White*, 877 F. 2d 1518, 1522 (11th Cir. 1989), the Eleventh Circuit held that competent counsel must raise all constitutional claims that have a reasonable basis available to counsel, or the claims are procedurally defaulted even if the court has previously rejected the claims, citing the *Engle* test and rejecting the futility argument later asserted and rejected in *Bausley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998).

In *Presnell v. Kemp*, 835 F. 2d 1567, 1576 n. 23 (11th Cir. 1988), the Eleventh Circuit quoted the Supreme Court in *Engle* as follows:

> The Court, without deciding "whether the novelty of a constitutional claim ever establishes cause for a failure to object", *Engle*, 456 U.S. at 131, 102 S. Ct. at 1573, found that the petitioners' claims were not novel because, at the time of their default, the petitioners did not "lack[] **the tools to construct their constitutional claims**". *Id*. at 133, 102 S. Ct. at 1574.

 (emphasis supplied).

In applying the "tools" test, this court first asks whether or not counsel for Holland had the "tools to construct Holland's constitutional claims". Insofar as the necessity for voicing objections at the sentencing hearing itself, the holdings in *Winship* and *Mullaney* prove that Holland's counsel had such tools at his disposal, both at the time of sentencing and on direct appeal.

24

*Winship*, which predated Holland's trial, held that the reasonable doubt standard of proof in criminal cases has constitutional stature and that all persons charged with a criminal offense are by the Constitution presumed innocent and may constitutionally be convicted only upon proof beyond a reasonable doubt of every element of the offense charged. *Winship* further specifically rejected use of the civil law standard of preponderance of the evidence in criminal proceedings because that would constitute a "deprivation of fundamental fairness".

*Mullaney*, which also predated Holland's trial, struck down a Maine requirement that a defendant charged with murder bears the burden of proving lack of malice.  There, the trial judge instructed the jury that if the prosecution established that a homicide was unlawful and intentional, malice aforethought was to be implied unless the defendant proved he acted in the heat of passion or as a result of a sudden provocation.  The issue of malice aforethought affected only the amount of punishment to be imposed.  As in Holland's case, the degree of punishment had been decided by someone other than a jury properly charged on the burden of proof.  The procedure was outlawed in *Mullaney*.  An alert lawyer in 1995 would or should have found *Mullaney*, in which the Supreme Court specifically rejected the arguments of Maine that *Winship* should not be extended to *Mullaney* because the absence of the heat of passion or sudden provocation is not a "fact necessary to

25

constitute the crime" of felonious homicide, and does not come into play until the jury already has determined that the defendant is guilty and may be punished at least for manslaughter.  Therefore, argued Maine, the presence or absence of the heat of passion or sudden provocation affects only the extent of punishment and should be considered a matter within the traditional discretion of the **sentencing** body and is not subject to rigorous due process demands.  The Supreme Court flatly rejected this argument, saying:

> There is no incompatibility between our decision today and the traditional discretion afforded sentencing bodies.  Under Maine law the jury is given no discretion as to the sentence to be imposed on one found guilty of felonious homicide.  If the defendant is found to be a murderer, a mandatory life sentence results.  On the other hand, if the jury finds him guilty only of manslaughter it remains for the trial court in the exercise of its discretion to impose a sentence within the statutorily defined limits.

> **\* \* \* \* \***

> The analysis fails to recognize that the criminal law of Maine, like that of other jurisdictions, is concerned not only with guilt or innocence in the abstract but also with the degree of criminal culpability.  Maine has chosen to distinguish those who kill in the heat of passion from those who kill in the absence of this factor.  Because the former are less "blameworth(y), [citation omitted] they are subject to substantially less severe penalties.  By drawing this distinction, while refusing to require the prosecution to establish beyond a reasonable doubt the fact upon which it turns, Maine denigrates the interests found critical in *Winship*.

95 S. Ct. at 1889, 1889 n. 23.

In short, *Mullaney* extended *Winship* to punishment factors, and in 1995, stood squarely for the proposition that factors that only

affected the degree of punishment must be proven by the Government beyond a reasonable doubt.

It is clear, then, that by 1995 other counsel had perceived the viability of the constitutional claim that should have been made at the time of Holland's sentencing. The Supreme Court handed down its decision in *Jones* only a month after Holland was sentenced. There, the defendant was charged with carjacking, a violation of 18 U.S.C. § 2119, that at the time provided that a person possessing a firearm who "takes a motor vehicle . . . from the person or presence of another by force and violence or by intimidation . . . shall — (1) be . . . imprisoned not more than 15 years . . . , (2) if serious bodily injury . . . results, be . . . imprisoned not more than 25 years . . . , and (3) if death results, be . . . imprisoned for any number of years up to life . . . ." The indictment in *Jones* made no reference to 18 U.S.C. § 2119's numbered subsections and charged none of the critical facts mentioned in subsections 2 or 3. Jones was told at arraignment that he faced a maximum 15-year sentence for carjacking, and the jury instructions at his trial defined that offense by reference solely to § 2119(1). After Jones was found guilty, the district court imposed a 25-year sentence on the carjacking charge, finding, without a jury, that s victim had suffered serious bodily injury. The trial court rejected Jones' objection that serious bodily injury was an element of the offense, something that had been

27

neither pleaded in the indictment nor proven to the jury.  In affirming, the Ninth Circuit agreed that § 2119(2) set out a sentencing factor, not an element of an independent offense.  The Supreme Court held that, with regard to federal law, the Fifth Amendment's due process clause and the Sixth Amendment's jury trial guarantee require that any fact other than a prior conviction that increases the maximum penalty for a crime, must be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt.  Holland's counsel had available to him the same "tools" from which counsel for Jones fashioned the winning strategy in the *Jones* case and which eventuated in *Booker*.  Jones prevailed, whereas Holland did not, arguably because Holland's counsel did not avail himself of these "tools".  This failure constituted unconstitutional ineffectiveness of counsel.

*Apprendi* built on *Mullaney*, pointing to *Booker*.  Apprendi pleaded guilty.  The admitted facts were that Apprendi fired several shots into the home of an African-American family and made a statement, which he later retracted, that he did not want the family to live in his neighborhood because of their race.  The charge to which he pled guilty was second-degree possession of a firearm for an unlawful purpose, which carries a prison term of 5 to 10 years.  The indictment did not refer to the State's hate crime statute, which provided for an enhanced sentence if a trial judge, without a jury's agreeing, found by a simple preponderance

28

of the evidence that the defendant committed the crime with a purpose to intimidate a person or group because of, *inter alia*, race. The prosecutor filed a motion to enhance the sentence. The trial judge found by a preponderance of the evidence that the shooting was racially motivated and sentenced Apprendi to a 12-year term on the firearms count. Apprendi's counsel made the unsuccessful claim that the due process clause requires that a bias finding be proven to a jury beyond a reasonable doubt. The Supreme Court ultimately accepted Apprendi's counsel's argument and held that the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt.

So, at the time Holland was sentenced and at the time an appeal was available to him, his counsel knew, or should have known, that the Supreme Court had enunciated a rule of constitutional law that directly affected Holland's sentencing. He knew, or should have known, that there was a reasonable possibility not only that this court would have agreed with Holland's position, but that the Supreme Court would declare unconstitutional the practice of federal judges' finding facts on which sentences are imposed or enhanced without the essential facts being charged in the indictment, without proof of those facts beyond a reasonable doubt, and without the participation of a jury. Yet, no objection

to the sentence or to the sentencing procedure was made by Holland's counsel. This clearly constituted unconstitutionally ineffective assistance of counsel.

The *Strickland* test is met in all respects by the facts and circumstances of this case. First, the performance prong of the test if met by the failure of Holland's trial and appellate counsel to make the potential constitutional claim. The prejudice prong of the *Strickland* case is met because an increase in the sentence imposed on Holland by the use of unconstitutional procedures constitutes prejudice, and because Holland very possibly would ultimately have prevailed on the restitution issue. The issue here, then, is not one of the retroactivity of *Booker*, but rather the ineffectiveness of Holland's defense counsel in failing to raise at trial and on direct appeal a constitutional claim with real potential for success. That potential was finally realized in *Booker*.

## Conclusion

A separate order implementing this opinion will be entered.

DONE this 8th day of July, 2005.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

30