FILED
2005 Nov-23 AM 11:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ALABAMA
                   NORTHEASTERN DIVISION

UNITED STATES OF AMERICA      }
                              }    CASE NO.
v.                            }
                              }    CR-94-AR-263-NE
STEVE RANDY HOLLAND           }
```

**MEMORANDUM OPINION**

This court on July 11, 2005, issued an opinion which the United States in its motion for reconsideration solicitously calls "scholarly and lengthy". This court agrees with "lengthy". The opinion can be found at *United States v. Holland*, 380 F. Supp. 2d 1264 (N.D. Ala. 2005). Not only has the United States filed a motion for reconsideration, but the defendant, Steve Randy Holland ("Holland"), apparently excited and incited by this court's opinion relieving him of any restitution obligation, filed a second *pro se* motion invoking 18 U.S.C. § 2255, this time asking for a reduction in his custodial sentence.

Holland's present *pro se* motion is easily distinguishable from his earlier motion that led to the appointment of counsel for him, to two lawyer-drafted amendments to his motion, and to the opinion of July 11, 2005, that recognized an end to his ostensible restitution obligation. Because Holland's new motion is without colorable merit, the court will not again appoint counsel for him, and instead will deny the motion.

In its original defense of the earlier motion that challenged

restitution, the United States put all of its eggs in the basket of contending that this court lacks jurisdiction to grant the relief sought by Holland, no matter on what theory or theories.  In pursuing its present motion for reconsideration, the jurisdictional argument still predominates, although the United States now responds to some of the arguments made by the court on July 11, 2005.  For instance, the United States now quarrels with some of the facts relied upon by Holland and/or by the court.  The court respectfully suggests that the United States had no reason prior to July 11, 2005, to assume that this court would not, in its initial opinion, write both to the jurisdictional issue and to the merits of Holland's motion, using facts undisputed or within this court's judicial knowledge.  The alternative suggestion now made by the United States that an evidentiary hearing would be appropriate comes too late.  Furthermore, several of the dispositive positions taken by the court on July 11, 2005, depended upon answers to questions of law and not to questions of fact.  Furthermore, it is hard for the court to find profit in conducting an evidentiary hearing to explore the quality of the performance of Holland's 1995 trial counsel when the record on the subject speaks for itself.

If, assuming *arguendo*, the court lacks jurisdiction, but is correct in its conclusion that Holland should no longer have any restitution obligation for one or more of the substantive reasons cited by the court on July 11, 2005, and if the Bureau of Prisons

("BOP") should continue to deduct restitution, does Holland have any legal recourse whatsoever?  The United States apparently believes that Holland has no avenue for relief.  If Holland cannot complain in the procedural ways he has complained, could he file a *Bivens* action against the warden?  The United States is saying, in effect: "While we can understand why the court finds the predicament in which Holland finds himself to be unfair in the extreme, there is nothing that he or any court can do about it".  This court likes to think that there is a concept called the "ends of justice" that can sometimes open the courthouse door when it might otherwise be closed.  This court agrees with the Seventh Circuit in *Peoples v. United States*, 403 F. 3d 844 (7th Cir. 2005), *cert. denied*, 126 S. Ct. 421, in which that court recently dealt with a defendant's second collateral attack on his sentence.  There the defendant, like Holland, invoked 28 U.S.C. § 2255.  The Seventh Circuit referred to the "ends of justice", as follows:

> The Court held in *Sanders* [*Sanders v. United States*, 373 U.S. 1, 83 S. Ct. 1068 (1963)] that an initial federal determination controls in subsequent rounds of review if "(1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the **ends of justice** would not be served by reaching the merits of the subsequent application."  373 U.S. at 15, 83 S. Ct. 1068.  What *Davis, Taglia* and other decisions, such as *Ryan* and *United States v. Mazak*, 789 F. 2d 580 (7th Cir. 1986), add to *Sanders* is that the "**ends of justice**" *do* support relitigation when the substantive law has changed or when evidence that could not have been discovered earlier despite diligent inquiries at last comes to light.  (The AEDPA codifies a similar standard for relitigation.  See

3

28 U.S.C. § 2244(b)(2).)

*Peoples*, 403 F. 3d at 847.

(italics the court's; emphasis otherwise supplied).

If there is an "ends of justice" exception to statutory limitations on the relitigation of issues that could have been litigated, but weren't, Holland's case is the exception.  Not only has the substantive law changed since Holland was sentenced in 1995, but he has never before raised the constitutional issue or the ineffective assistance of counsel.  Either Holland should be excused for not having previously challenged the efficacy of his restitution obligation, or his trial lawyer was ineffective in failing to raise it.  Both can be forgiven for the lawyer's not raising his own ineffectiveness.  Holland had no way of knowing until he had already lost his direct appeal, represented by the lawyer who this court has found to have been ineffective, that Holland's fellow bank robber, William Bennett Hicks, his joint obligor, had been released from the joint obligation.  The United States argues with this court's finding that Hicks was relieved of the joint restitution obligation by another court.  If this court was wrong, and if Hicks was not relieved of his restitution obligation by another court, he was automatically relieved of it by the application of 28 U.S.C. § 3579(f)(2)(B), which ends any restitution obligation "five years after the end of imprisonment imposed".  Hicks had been out of prison longer than five years when

the BOP started again deducting from Holland. The anomaly of Hicks's being discharged while Holland is still imprisoned and is being subjected for years to come to deductions toward restitution cannot be reconciled with the concept "ends of justice".

After writing its opinion of July 11, 2005, in which the court pointed out the Eleventh Circuit's clear holding that restitution is a penal sanction, the court became aware of Susan Klein's article found at 39 Val.U.L.Rev. 693 (2005), entitled "Shifting Powers in the Federal Courts", in which Professor Klein pointedly says:

> The Mandatory Victim's Restitution Act is likewise now rendered advisory, or **the facts necessary to establish the appropriate imposition of restitution must be submitted to a jury beyond a reasonable doubt.** In 1996, Congress enacted the Mandatory Victim's Restitution Act, which requires that the court order restitution to the victim of an offense, after making necessary factual findings as to the amount of loss, any medical expenses, and lost income resulting from the defendant's crime. 18 U.S.C. § 3663A (2000). **It seem to me that these factual findings increase the statutory maximum penalty for the offense from no restitution to a higher amount, and that therefore these facts should be submitted to a jury for a beyond a reasonable doubt finding** (or the restitution should be interpreted as discretionary).

*Id*. At 722 n. 138.

(emphasis supplied).

Professor Klein agrees with this court and implicitly with the Eleventh Circuit. Holland's trial and appellate lawyer should have anticipated both what she said and what *Booker* held.

This court does not quite know what to make of the paper

5

entitled "Notice of Compliance" filed by the United States on August 5, 2005, on behalf of the BOP.  This "notice" was filed by a different Assistant United States Attorney from those who filed the motion for reconsideration.  This court required no such "notice" and certainly did not mean to order the BOP to return to Holland any money that it had already deducted and remitted to the victim before receiving the opinion of July 11, 2005.

A separate order consistent with this opinion will be entered.

DONE this 23rd day of November, 2005.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE